IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LABORERS' PENSION FUND, etc., et al., | ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) No. 06 C 3383 ) |
| HESSEN PRESSURE WASHING, LLC., a Maryland limited liability company, d/b/a HESSEN PRESSURE WASHING, INC., | ) ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Laborers' Pension Fund, Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (collectively the "Funds") and James Jorgensen, Administrator of the Funds, move for summary judgment against defendant Hessen Pressure Washing, LLC, doing business as Hessen Pressure Washing, Inc. ("company") for failure to pay employee benefit contributions and union dues in breach of a collective bargaining agreement. The company, without counsel since early 2007, has not responded, despite receiving notice of the motion from plaintiffs' counsel. Since the record demonstrates that there are no genuine issues of material fact, we grant plaintiffs' motion.

## BACKGROUND

The following facts are taken from plaintiffs' statement of undisputed facts, and are supported by the record. Adrien Hessen ("Hessen") was at all relevant times the president of the company. Robert Stebelton, self-employed in the construction industry, signed an

independent contractor agreement with Hessen, to perform work for the company. His position was "Chicago Operations for Hessen Pressure Washing" and he had business cards that contained this title and the company's phone number. Stebelton's company duties included, but were not limited to, bidding for Chicago contracts on the company's behalf. His authority extended to signing contracts for rental equipment for company use on projects, and signing delivery slips for supplies.

The company was hired as a subcontractor to a subcontractor, to perform cleaning work on a construction project at 2111 W. Roosevelt Road, in Chicago, Illinois. The subcontractor that hired the company, UNI-MAX Management Corporation, was a subcontractor to the general contractor, Project for Bovis Land Lease, Inc. Stebelton was in charge of the company's work on the project, and his duties included determining how many workers were needed, when they were needed, filling out and submitting workers' time sheets to UNI-MAX, and delivering paychecks to workers. He was also responsible for ensuring the company completed its work on time. The company began work on approximately March 13, 2006.

Prior to being hired as a subcontractor, Stebelton was informed by the general contractor that the company must employ union workers. Stebelton gave this information to Hessen. In March 2006, Stebelton met with officials from the Construction and General Laborers' District Council of Chicago and Vicinity ("union") at the project site. During the meeting, Stebelton called Hessen and informed him that the union was requesting the company to enter into a collective bargaining agreement.

The terms of the agreement obligated the company to make contributions (on behalf of its employees covered by the agreement) for pension, health, and welfare benefits, as well

as payments to a training fund. It also required the company to submit monthly remittance reports in which the company identified covered employees and the amount of contributions to be remitted on behalf of each of them. All payments were to be remitted to the Funds. In the event that the company failed to make timely benefit contributions, the terms of the agreement and the Funds' respective Agreements and Declarations of Trust ("trust agreements") mandated that late contributions be assessed up to 20% in liquidated damages plus interest.

Stebelton called Hessen to obtain his consent to sign the contract, and Hessen told him to "go ahead and sign it." After this initial phone call, Stebelton again phoned Hessen to obtain the company's address, which was required to be written on the contract. Shortly thereafter, Stebelton signed the short-form collective bargaining agreement with the union on the company's behalf.

After signing the agreement, the company hired union workers, and worked on the construction project until approximately April 9, 2006. The union members were paid the hourly wage required by the contract. During the project, Stebelton kept a personal log of hours each employee worked. He shared this information with UNI-MAX and Hessen, and he and Hessen regularly discussed the information to estimate the company's labor costs. An audit of the company, conducted by the Funds, for the period of March 24–April 8, 2006, found that the company failed to report a total of 444.50 hours of covered work performed by union members. Based on the number of hours union members worked, the company was required, but failed, to submit benefit contributions and union dues in the amount of $5,274.45.

## ANALYSIS

We have jurisdiction over this proceeding pursuant to ERISA and the Labor Management Relations Act ("LMRA"). 28 U.S.C. § 1331; 29 U.S.C. § 1132(e)(1); 29 U.S.C. § 185(a).[1]

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (U.S. 1986). We must evaluate admissible evidence in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Where, as here, the non-moving party has failed to respond to the movant's statement of material facts, we may deem those facts as admitted under local rule 56.1(b)(3). Smith v. Severn, 129 F.3d 419, 425-26 (7th Cir. 1997).

The only issue possibly in dispute is whether the company entered into the collective bargaining agreement with the union. The record is clear that Stebelton signed a short-form collective bargaining agreement with the union, and that the agreement bound its parties to the terms of the agreement, as well as to the terms of the Funds' trust agreements. The only question is whether Stebelton had authority to bind the company to the agreement.

We look to federal common law to answer this question. Moriarty v. Glueckert Funeral Home, 155 F.3d 859, 866 n.15 (7th Cir. 1998). An agent relationship arises when an agent has

---

[1] The Funds are multi-employer benefit plans within the meaning of 29 U.S.C. § 1002(3) and 37(A), and are established and maintained pursuant to the trust agreements in accordance with 29 U.S.C. § 186(c)(5). Plaintiff Jorgensen is the Funds' administrator and is their fiduciary within the meaning of 29 U.S.C.§ 1002(21)(A). The company, at all relevant times, was an employer within the meaning of 29 U.S.C. § 1002(5) and 29 U.S.C. § 185(c). Finally, the union is a labor organization within the meaning of 29 U.S.C. § 185(a).

either actual or apparent authority to act on a principal's behalf. Opp v. Wheaton Van Lines, Inc., 231 F.3d 1060, 1064 (7th Cir. 2000). Actual authority may be either express or implied, (*id.*) and an "agent has express authority when the principal explicitly grants the agent the authority to perform a particular act." Sphere Drake Insurance Ltd. v. American General Life Ins. Co., 374 F.3d 664, 652 (7th Cir. 2004).

The record demonstrates that Stebelton had express authority to bind the company to the terms of the collective bargaining agreement. In his deposition, Stebelton testified that he had received this authority over the phone from Hessen, that he knew it was Hessen on the phone because he knew the sound of Hessen's voice, and that he was sure he had received the authority because he spoke to Hessen twice, in quick succession – once to obtain consent, and again to get the company's address. Stebelton testified that he told Hessen of the purpose and content of the contract, and that Hessen directed him to sign it. The company has offered no evidence to rebut Stebelton's testimony, and we find Hessen's statements are clear evidence of Stebelton's express authority to bind the company to the collective bargaining agreement. Therefore, the company violated the terms of the agreement as a matter of law when it failed to make the requirement benefits payments to the Funds.[2]

As stated above, the company failed to make payments in the amount of $5,274.45. Pursuant to the terms of the collective bargaining agreement and the Funds' trust agreements, the Funds assessed 10% in liquidated damages, amounting to $527.44. In addition, the Funds incurred $481.80 in audit costs, as well as interest on the delinquent amount. At the time of this motion, that interest totaled $794.49, and thus the company owed the Funds a total of $7078.18. We enter summary judgment in favor of plaintiffs, and request them to provide this

---

[2]Since we find Stebelton's authority to be actual and express, we need not analyze whether he had implied or apparent authority.

court with a current accounting, including additional accrued interest as of the date of this order.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for summary judgment is granted.

JAMES B. MORAN
Senior Judge, U. S. District Court

March 25, 2008.